### IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ADAM FLETCHER YOUNG,      )
     )
         **Petitioner,**      )
     )
       **vs.**      )      **Case No. CIV-10-608-D**
     )
MIKE ADDISON, Warden,      )
     )
         **Respondent.**      )

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Petitioner and Respondent have briefed their positions, and Respondent has filed the relevant state court Preliminary Hearing Transcript (PH. Tr.), Suppression Hearing Transcript (SH. Tr.), Trial Transcript (T. Tr.) and the Original Record (O.R.). For the following reasons, it is recommended that the Petition be denied.

### Procedural History

Petitioner was convicted in the District Court of Garfield County, Case No. CF-2005-89, of trafficking in a controlled dangerous substance (marijuana) and sentenced to 10 years imprisonment. *See* O.R., p. 145. Petitioner filed a direct appeal and the Oklahoma Court of Criminal Appeals (OCCA) affirmed. *See* Response, Ex. 3. Thereafter, the state court denied Petitioner's application for post-conviction relief, and the OCCA again affirmed. *Id.,* Ex. 5.

Petitioner then filed a petition for habeas relief in this Court. Respondent's Response and Petitioner's Brief in Support were filed the same day, and Petitioner thereafter filed a "Traverse" (hereafter "Reply"). However, upon Respondent's motion, the Court struck Petitioner's 74-page Brief in Support [Doc. No. 10]for failing to comply with local court rules regarding length and format. With permission, Petitioner has filed a Second Amended Brief in Support and Respondent has filed a Supplemental Response. Petitioner has also filed a Supplemental "Traverse" (hereinafter "Supplemental Reply").

For purposes of this review, the undersigned has considered the Petition [Doc. No. 1],[1] Response [Doc. No. 7], Reply [Doc. No. 13], Second Amended Brief in Support [Doc. No. 34], Supplemental Response [Doc. No. 47], and Supplemental Reply [Doc. No. 51].[2]

---

[1]The Petition is not properly paginated. Therefore, reference herein to the page numbers reflects the Court's Electronic Case Filing (ECF) pagination.

[2]Throughout Petitioner's pleadings, he attempts to expand his arguments through "incorporating by reference" other documents. For instance, Petitioner would have the Court consider: (1) his 19-page direct appeal brief, (2) the State's 9-page direct appeal response, (3) his 299-page application for post-conviction relief and brief in support; (4) his 29-page application for post-conviction relief appeal brief; (5) his 26-page reply to the State's response to his application for post-conviction relief; (6) his 25-page motion for enlargement of time [Doc. 31]; (7) his 18-page objection to the undersigned's denial of his motion to supplement [Doc. 18]; (8) his 22-page objection to the undersigned's denial of his various motions [Doc. 30]; and, (9) his 9-page motion for judicial notice [Doc. 38]. *See* Petition, p. 8; Reply, pp. 12, 16, 19-20, 26-27, 29; Second Amended Brief in Support, pp. 2, 5-8, 10-11, 14-15, 17-21, 26, 29-30; Supplemental Reply, pp. 2-5, 8-10.

In essence, Petitioner "invites us to unearth [his] arguments lodged here and there . . ., leaving it to us to skip over repetitive material, to recognize and discard any arguments that are . . . irrelevant, and to harmonize the arguments in the various documents." *Northland Insurance Company v. Stewart Title Guaranty Company*, 327 F.3d 448, 452 (6th Cir. 2003) (refusing to consider multiple arguments - spanning multiple pleadings - which were simply "incorporated by reference"). Further, Petitioner has been warned in the past that the Court would not accept

(continued...)

**Petitioner's Claims**

In his Petition, Petitioner raises three claims for relief:  ineffective assistance of appellate counsel (Ground One), cumulative error (Ground Two), and due process violations through "arbitrary and capricious" state court rulings (Ground Three).  Petition, pp. 5-6, 8.

In his Second Amended Brief in Support, Petitioner "clarifies" his ineffective assistance of appellate counsel claim in 19 sub-propositions labeled (A)-(S).  According to Petitioner, appellate counsel was ineffective for failing to investigate, raise and/or argue properly:  (A) the lack of jurisdiction of the arresting officer, (B) the lack of jurisdiction of the state trial court, (C) Petitioner's expectation of privacy on the airport tarmac, (D) the timing of the "act/crime" justifying Petitioner's arrest, (E) the lack of criminality of the "act/crime" for which Petitioner was arrested, (F) the contextual nature of the "act/crime" for which Petitioner was arrested, (G) that Petitioner was entrapped, (H) that Petitioner's consent to search was coerced, (I) the "tainting" of the illegal arrest and coercion on the evidence, (J) the need for "detention" of the evidence pending a warrant, (K) the officers' lack of probable

---

[2](...continued)

pleadings over the relevant page-limit, *see* Doc. 16, and it is clear that Petitioner has attempted to circumvent the page-number limits through "incorporating" multiple, lengthy pleadings.

For these reasons, the undersigned declines to consider any argument not raised and briefed in the Petition or Second Amended Brief in Support.  It is not the duty of this Court to comb through over 450 pages of past pleadings to find support and argument for Petitioner's theories.  *See Johnson v. Miller*, 387 Fed. Appx. 832, 838 (10th Cir. 2010) (noting that even when liberally construing a *pro se* pleading, the court takes no responsibility for sifting through records to find supporting arguments or evidence); *Chambers v. Dretke*, 145 Fed. Appx. 468, 471-72 (5th Cir. 2005) (refusing to consider documents "incorporated by reference" which pushed the petitioner's habeas petition far past the page-number limit, without prior authorization from the court).

cause or reasonable suspicion to detain Petitioner without a warrant, (L) the state court's lack of logic for decisions at "preliminary hearing, both suppression hearings, trial, direct appeal and post-conviction proceedings," (M) the conspiracy among prosecutors and federal and local law enforcement witnesses to use "perjury, sophistry, obfuscation and material misrepresentation of the facts" to "deceive the court," (N) the state court's reliance on "perjury, material inconsistent statements, material mischaracterizations and material misrepresentations," (O) the prosecutor's four *Brady* violations, (P) the State's "material" *Crawford* violation, (Q) the state court's failure to instruct on entrapment, (R) the state court's placement of questions of law before the jury, and (S) ineffective assistance of pre-trial and trial counsel.[3]   Second Amended Brief in Support, pp. 1-29.

## Relevant Testimony

Testimony established that in January 2005, the Federal Bureau of Investigations (FBI) and Bureau of Immigration and Customs Enforcement (ICE) became aware of suspicious flights by Petitioner to cities along the Mexico/Texas border and then to points elsewhere in the United States in rented aircrafts.  *See* PH. Tr., p. 5; T. Tr., Vol. II, pp. 9-10.[4] Suspecting illegal drug activity, federal officers conducted a background check on Petitioner

---

[3]In subsection (S) Petitioner also alleges that appellate counsel is responsible for failing to investigate and/or raise the issues addressed in the first 18 subsections.

[4]Testimony regarding Petitioner's arrest and search of his aircraft spans multiple hearings and involves multiple witnesses.  To avoid repetition, the undersigned has largely cited to the testimony  two particular officers, rather than citing to the testimony in every transcript.  The relevant testimony of the State's witnesses was generally consistent; any material inconsistencies have been noted.

and placed him under surveillance. *See* PH. Tr., pp. 5-6. The background check revealed that Petitioner had a prior criminal record for fraud or larcenies and a weapons violation. SH. Tr., pp. 3-4, 46. Agents also learned that Petitioner was incurring bills of $2,000 to $3,000 per trip for fuel and rental charges although records indicated that he was apparently not employed. *Id.,* p. 4.

On January 24, 2005, while under surveillance, Petitioner rented a small plane and departed from Houston to Chicago. *Id.*, pp. 4-5. Having subsequently learned that Petitioner was flying from Chicago to El Paso,[5] agents began to conduct surveillance of the aircraft as it arrived in El Paso. *Id.*, p. 6; PH. Tr., p. 25. Petitioner spent the night at a hotel and the next day he was observed purchasing plastic bags or "heat-sealed type" bags, typically used by people transporting narcotics in order to decrease the chances of a drug dog alerting to the smell. SH. Tr., pp. 6-8. Agents also observed two Hispanic males in a van arrive at the hotel and knock on Petitioner's door. *Id*., p.7. Later, agents observed the same van at the El Paso airport, parked near the plane rented by Petitioner. *Id.* The agents also observed people going back and forth between the van and the plane although agents did not see any actual items being transferred. *Id.*

Based on this suspicious activity, FBI Agent Joel Davis, ICE Agent Randy Rieger, and two or three other federal officers boarded ICE aircrafts and followed Petitioner from El Paso to the Enid airport. *See* PH. Tr., pp. 6-7. At the Enid airport, the federal officers

---

[5]Agents considered El Paso a "source city" described as a city close to the Mexican border which is a source of narcotics coming into the United States. PH. Tr., p.5.

departed their aircrafts and approached Petitioner while he was refueling his own plane. *See id.*, pp. 7-8. Agent Davis admitted that when the federal officers first approached Petitioner, they "had no probable cause for arrest[.]" SH. Tr., p. 11. Therefore, their intention was to "approach [Petitioner], inquire about his travels, and ask for a consent to search his aircraft." PH. Tr., p. 8. According to Agent Davis, as the officers approached, Petitioner appeared very nervous, running his fingers through his hair, pacing, and looking confused. *Id.*, pp. 8-9. Officer Davis, a pilot himself, opined that because the officers had just exited multimillion dollar jets at a public airport rather than a back alley somewhere, Petitioner's nervous reaction was unusual. SH. Tr., pp. 43-44

Agent Davis testified that one of the ICE agents "whistled and said, hey, can we talk to you for a minute." PH. Tr., p. 9. According to Agent Davis, Petitioner began walking towards the officers but within "one hundred yards or so" Petitioner turned away and proceeded back toward his own aircraft. *Id*. Agent Davis testified further that the same ICE agent "whistled again, and said, hey, listen can we talk to you for a minute, can you stop." *Id.*

With officers only fifty feet away, Petitioner turned and opened his jacket or "threw back his jacket very quickly in a very strange motion" and pulled out a "heavy-duty box cutter."[6] *Id.*, pp. 9-10. According to Agent Davis, Petitioner "[f]lipped it open and said, I

---

[6]Agent Davis described the box-cutter as "unique. . . . About an inch thick with a fold-out blade, almost like a hook that would come out, almost like a carpet cutter. Very, very heavy duty, not your typical razor blade that slides in and out type of box cutter." PH. Tr., p. 11.

can't go back.  I can't go back, or I'm not going back." *Id.*, p. 10.  Officers understood Petitioner's action and statements to mean he was desperate, could not go back to prison, ready to fight, and perhaps "thinking of suicide at that time." *Id.*, pp. 11-13.  Agent Davis emphasized that when Petitioner pulled the box cutter, the officers "thought he was a threat to us" and "to himself" and it increased their suspicion that Petitioner was engaged in illegal activity.  *Id.*, p. 13.

At that point, the federal officers drew weapons, and Petitioner was detained.  *See id.*, p. 10.  Agent Davis then identified himself as an FBI agent and advised Petitioner of his *Miranda* rights.  *See id.*, pp. 13-14.  Agent Davis then commented, "is there something else in the plane other than cocaine," to which Petitioner replied,  "Cocaine?  They told me it was marijuana." *Id.*, p. 14.  Petitioner then told the agent that it was the first time he had flown a load of marijuana to Chicago, that he was being paid $20,000.00, and that on three or four prior occasions, he had made other deliveries to Memphis for the same organization, also for twenty thousand dollars a trip.  *See id.*, p. 15.  Agent Davis described Petitioner's rented aircraft as small, "like looking into the back of a Volkswagen Beetle" and stated that when you looked into the windows "[p]retty much everything from the back of the front seats, the back supports, all the way to the back of the airplane was completely up to the window level with baggage, baggies, bundles of [what was later established to be] marijuana."  SH. Tr., pp. 60, 67.

Enid Police Officer Eric Reddick testified that his department received a call from the federal officers asking if Enid had a "working K-9 on duty."  PH. Tr., p. 42.  Officer Reddick

proceeded to the Enid airport with fellow Enid police officers and the K-9 "Rex."  The dog

conducted a sniff search of Petitioner's aircraft and "alerted" to the presence of narcotics.

*Id.*  Officer Reddick and another officer then opened the aircraft and removed several large

black trash bags.  Inside those trash bags were "what looked to be bricks of marijuana."  *Id.*,

pp. 42-44.  Officer Reddick stated that "from the time [he] got [to the airport] to the time the

dog had alerted on the airplane no one had been inside the airplane."  *Id.*, p. 50.  FBI Agent

Davis agreed that he did not ever enter the aircraft and believed that other federal officers had

done so only after the dog "alerted on the plane."  *Id.*, p. 18; SH. Tr., pp. 27-28.  Eventually,

Officer Reddick cut into one of the "bricks" to discover a "green leafy substance" that tested

positive for "THC content."  PH. Tr., p. 47.  In total, Enid police officers found 421 "bricks"

- weighing approximately 400 pounds - of marijuana in Petitioner's aircraft.  T. Tr. Vol. II,

pp. 131-32.

Petitioner testified that he believed he was transporting Mexican and Persian rugs and

that he only pulled the box cutter because he did not see anything identifying the men as law

enforcement[7] and seeing five men approach scared him.  *Id.*, pp. 180, 184, 190-91, 207.

Petitioner did not "recall" being read his *Miranda* rights and denied that he told Agent Davis

---

[7]Testimony regarding whether the federal officers were in uniform was inconsistent.  At the preliminary hearing, Agent Davis stated that he had not been in uniform, but two and possibly three of the other federal officers were uniformed.  *See* PH. Tr., pp. 10-11, 29-30.  At the suppression hearing Agent Davis testified that three or four of the officials had been in "plain clothes," but one official had on a "Customs winter parka."  SH. Tr., pp. 14, 43.  At trial, Agent Davis stated that two or three of the officers displayed "emblems."  T. Tr. Vol. II, p. 40.  ICE Agent Rieger testified that he was displaying a badge and believed other officers were either wearing "raid jackets" or displaying badges.  *Id.*, pp. 19-20.

that he knew he was carrying marijuana. *Id.*, pp. 193-94, 208, 219. Petitioner did state that he gave the officials permission to search the plane. *Id.*, pp. 193-94.

## Standard Governing Habeas Review

When the OCCA denies a claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard. "[The AEDPA] reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (citation omitted). Thus, habeas relief may be granted only if the OCCA's adjudication of the merits of a federal claim has resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). Further, judicial review is directed to the result of the OCCA's decision, not its reasoning. *See Harrington v. Richter*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."). Thus, even "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the

9

result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). Thus, the AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). The AEDPA further mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

When the OCCA has not addressed a claim on the merits, this Court may decide the claim by exercising its independent judgment. *See, e.g., Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

## Analysis of Claims

### I.  Ground One - Ineffective Assistance of Appellate Counsel

In Ground One Petitioner identifies nineteen bases for his claim that appellate counsel was ineffective. Petition, p. 5. For the following reasons, the undersigned concludes that habeas relief is not warranted on this claim.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a counsel's performance is not constitutionally ineffective unless it was both deficient and prejudicial. *See id.* at 688, 692.[8] Prejudice is shown if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Recently, the Supreme Court has reiterated that on federal habeas review, the question is *not* whether counsel's performance fell below the *Strickland* standard, but whether the OCCA's adjudication of a *Strickland* claim was unreasonable. *See Harrington v. Richter*, 131 S. Ct. at 785. In other words, it is not even enough that the federal court finds a violation of *Strickland*. If that occurs, the court must then also determine "what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with [*Strickland*]." *Id.* at 786.

On post-conviction appeal, the OCCA rejected Petitioner's claim of ineffective assistance of appellate counsel without discussing all nineteen of his sub-propositions. *See* Response, Ex. 5 pp. 1-2. Regardless, Petitioner's "burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. at 784 (holding that a habeas petitioner carries the burden "whether or not the state court

---

[8]Petitioner complains that on post-conviction appeal, the OCCA did not apply *Strickland*, instead citing *Cartwright v. State*, 708 P.2d 592 (Okla. Crim. App. 1985). Supplemental Reply, p. 3. Such citation is immaterial, however, as the court in *Cartwright* relied on *Strickland*. *See Cartwright v. State*, 708 P.2d at 594. Further, the OCCA need not even be aware of controlling Supreme Court law so long as neither its reasoning or result contradicts it. *See Early v. Packer*, 537 U.S. 3, 8 (2002).

reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated").

### Appellate Counsel's Argument on Direct Appeal and the OCCA's Decision

To address Petitioner's claims regarding what appellate counsel *did not* argue on direct appeal, it is important to note what the attorney *did* raise on direct appeal.  Appellate counsel challenged Petitioner's conviction by arguing that Petitioner's statements and evidence discovered as a result of the unlawful arrest for brandishing the box cutter were "fruits of the poisonous tree" because:  (1) the federal officers admitted that before making contact with Petitioner, they lacked probable cause to search his plane; (2) the officers were not in uniform and failed to identify themselves as federal officers until *after* Petitioner pulled out a box cutter; and (3) the brandishing of the box cutter was not a crime.  Response, Ex. 1 pp. 3-4, 7, 15-19.

The OCCA rejected these arguments, holding:

> Considering the totality of the circumstances known to the agents when they approached [Petitioner], [his] act of showing a weapon and saying "I can't go back" represented an apparent danger to officer safety and provided reasonable suspicion to detain [Petitioner], disarm him, and question him. [Petitioner's] statements following a *Miranda* warning gave officers probable cause to search the airplane and seize its illegal cargo.  "Probable cause sufficient to justify a warrantless search of a vehicle exists if an officer reasonably believes the vehicle contains contraband or evidence of a crime." This evidence was properly admitted against [Petitioner] at trial.

*Id.*, Ex. 3 pp. 1-2 (citations omitted).

### Argument (A) - The Lack of Jurisdiction of the Arresting Officer

In subsection (A), Petitioner argues that his appellate counsel erred in failing to

12

challenge the jurisdiction of the arresting officer.  Second Amended Brief in Support, pp. 2-5.
Petitioner specifically argues that it was an ICE agent who:  (1) "first hailed Petitioner" and
"seized him without a warrant by whistling at him a second time" and asking him to stop, (2)
handcuffed and detained Petitioner, and (3) first searched the aircraft.  *Id.*, pp. 2-3.  Petitioner
claims that because he is a United States citizen and was not under any legitimate
investigation for violation of "immigration laws," the ICE agent lacked jurisdiction over
Petitioner.  *Id.*, pp. 3-4.  Petitioner has failed to carry his burden on this issue.

The ICE is not limited to investigating immigration matters but is also concerned with
investigating "drug smuggling."  T. Tr. Vol. II, pp. 2-3.[9]  As an agency of the United States
Department of Justice, the ICE has jurisdiction to conduct such investigations even within
the United States under 21 U.S.C. § 801, *et. seq.* which establishes that "federal control of
the intrastate incidents of the traffic in controlled substances is essential to the effective
control of the interstate incidents of such traffic."  21 U.S.C. § 801(6); *see also* 21 U.S.C. §
873(a) (arranging for the cooperation of federal investigative agencies in investigating and
combating traffic of controlled substances).  Consequently, the ICE agent was acting within
his legal authority when he asked Petitioner to stop with the intention of having a consensual
conversation about potential drug law violations.  Further, when Petitioner brandished the
box cutter, the federal agents were authorized to detain him.[10]  *See* Okla. Stat. tit. 21 § 641

---

[9]*See also* http://www.ice.gov/narcotics/ (describing the jurisdictional boundaries of the ICE's
narcotics enforcement division).

[10]It is actually unclear from the record whether it was an ICE agent or one of the other federal
(continued...)

(making it a crime to "attempt or offer with force or violence to do a corporal hurt to another"); Okla. Stat. tit. 21 § 99 (granting any authorized federal officer the power to "arrest any person committing any offense in violation of the laws of [Oklahoma]"); 19 U.S.C. § 1595a(3) (granting a customs agent the authority to "make an arrest without a warrant for any . . . felony . . . if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony"). Finally, the record establishes that when the ICE agent helped search the aircraft, authorities had probable cause to believe that Petitioner was transporting marijuana. *See supra* pp. 6-7.

Because there is no merit to Petitioner's underlying claim that the ICE agent lacked jurisdiction to take relevant actions in this case, the OCCA reasonably applied *Strickland* when it determined that appellate counsel was not constitutionally ineffective for failing to raise such claim on direct appeal.

### Argument (B) - The Lack of Jurisdiction of the State Trial Court

In his next argument, Petitioner claims that the affidavit relied upon to find probable cause for Petitioner's arrest and search of his aircraft was based on "material falsehood and/or omissions[,]" and therefore, the state trial court lacked jurisdiction "to judge and sentence Petitioner." Second Amended Brief in Support, p. 5. The only explanation for Petitioner's claim of "material falsehood and/or omissions" is a copy of the probable cause

---

[10](...continued)
officers who handcuffed Petitioner. *See, e.g.,* SH. Tr., pp. 18, 46. The undersigned has assumed for the purposes of addressing this claim that it was an ICE agent.

affidavit on which Petitioner has written that certain statements are "lies" and that the affidavit "omitted actual point of seizure." *Id.*, p. 5 (citing Doc. 11, Ex. 35). Petitioner also provides a copy of the Information and the Amended Information but does not direct the Court's attention to any falsehoods or omissions in those documents. *See id.* (citing Doc. 11, Exs. 72, 73).

Petitioner relies on *Harjo v. State*, 797 P.2d 338 (Okla. Crim. App. 1990) to suggest that this claim would have been meritorious on direct appeal. *See id.*, p. 5, note 8. In *Harjo*, the court held that "a criminal information is insufficient [to invoke the jurisdiction of the court] if it does not allege all the essential elements of the offense charged[.]" *Harjo v. State*, 797 P.2d at 342. Petitioner does not, however, allege that the Amended Information lacked all the essential elements. Indeed, Petitioner does not sufficiently address any alleged defect in the Amended Information. Consequently, Petitioner has failed to carry his burden of showing that the OCCA unreasonably applied *Strickland* when it failed to find that appellate counsel had been constitutionally ineffective for failing to challenge the trial court's jurisdiction.

### Argument (C) - Petitioner's Expectation of Privacy on the Airport Tarmac

In subsection (C), Petitioner argues that the airport tarmac was a "non-public" place pursuant to federal regulations and he therefore had an "expectation of privacy in the material area . . . clearly recognized by society." Second Amended Brief in Support, p. 6. This argument is without merit and would not have been successful if raised on direct appeal.

Liberally construed, Petitioner's argument appears to be grounded in the theory that

probable cause alone is not sufficient to sustain a warrantless search where there is a legitimate expectation of privacy. *See California v. Carney*, 471 U.S. 386, 390 (1985) (explaining that the Fourth Amendment's "fundament right [to be free from unreasonable searches and seizures] is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer"). However, even if the tarmac was in a restricted area and Petitioner had an expectation of privacy in that location (a determination the Court need not reach),[11] the mobility of his aircraft would allow for a warrantless search based on probable cause. *See Carroll v. United States*, 267 U.S. 132, 153-54 (1925) (establishing the "automobile exception" based on the mobility of the vehicle).

The court in *Carroll* held that the mobility of a vehicle, allowing for easy disappearance of evidence, creates an exception to the general rule that searches must be pursuant to a warrant. Thus, as long as there is probable cause to suspect the vehicle contains or is transporting contraband, a warrantless search of an automobile is valid. *See United States v. Ross*, 456 U.S. 798, 823 (1982) ("[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband."). The automobile exception applies as long as the vehicle is "readily capable of [being used on the highways] and is found stationary in a place not

---

[11]On direct appeal, the burden would have rested on Petitioner to prove that he had a legitimate and objectively reasonable expectation of privacy in a restricted area of a public airport. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979); *Rawlings v. Kentucky*, 448 U.S. 98, 104-105 (1980) (citations omitted). Aside from his bald allegations, Petitioner does not demonstrate how he could have carried such a burden. Agent Davis testified that the aircraft was located in a "public area of the airport[,]" and Petitioner offered no evidence at trial that the tarmac was a restricted area. T. Tr. Vol. II, p. 100.

regularly used for residential purposes . . . ." *California v. Carney*, 471 U.S. at 392-93. Courts have therefore held that under this exception, the fact that the search took place on private property is inconsequential. *See United States v. Fields*, 456 F.3d 519, 524-25 (5th Cir. 2006) (rejecting defendant's argument that "automobile exception" did not apply where vehicle was parked on private property); *United States v. Gallman*, 907 F.2d 639, 642 (7th Cir. 1990) (holding that officials' warrantless search of vehicle parked in a private parking garage was valid under the "automobile exception"); *United States v. Reiss*, Nos. CR-08-723, CV-10-2330, 2011 WL 4501916, * 2 (D. Ariz. Sept. 29, 2011) (unpublished op.) ("This Court is unaware of any authority that would change the rule for permissible searches of vehicles because the observation of the officer of the vehicle was in a private parking lot rather than on a public road."). The so-called "automobile exception" has been extended to aircrafts. *See United States v. Gooch*, 603 F.2d 122, 124-25 (10th Cir. 1979) (noting that even when parked an aircraft is ultimately capable of mobility and is logically encompassed within the "automobile exception").

As previously noted, the OCCA held that officers had probable cause to search Petitioner's aircraft based on the statements he made to Agent Davis, *see supra*, pp.12-13, and the drug dog's alert would also have provided a basis for probable cause. *United States v. Ludwig*, 10 F.3d 1523, 1527-28 (10th Cir. 1993) ("We have . . . held in several cases that a dog alert without more gave probable cause for searches and seizures."). Consequently, notwithstanding any expectation of privacy Petitioner might have had on the tarmac of the Enid airport, because the officers had  probable cause to suspect that the aircraft contained

illegal drugs, the warrantless search was valid.   Therefore, there is not a reasonable probability that the outcome of Petitioner's direct appeal would have been different if appellate counsel had raised this issue, and the OCCA reasonably applied *Strickland* when it found that appellate counsel was not ineffective.

### **Argument (D) - The Timing of the "Act/Crime" Justifying Petitioner's Arrest**

In subsection (D), Petitioner asserts that the "'act/crime' by which both the district court **and the OCCA justified Petitioner's arrest occurred after he was already arrested**."   Second Amended Brief in Support, p. 7 (emphasis in original).   Petitioner explains further that appellate counsel failed to "make an analysis of Petitioner's arrest" "indicating the actual moment of his arrest and the significance of it occurring at that moment as opposed to when counsel[] . . . placed it." *Id.*, pp. 7-8.   According to Petitioner, counsel's failure to note that "the box cutter showing" was made "post-arrest" contributed to the OCCA's "fundamental flaw" in finding that the detention was legitimate.   *Id.*, p. 7.

Liberally construed, Petitioner's claim suggests that he had been "seized" or "arrested" when federal officers asked him to stop and talk without reasonable suspicion or probable cause.   Petitioner therefore claims that his brandishing the box cutter could not be grounds for the detention because it occurred after the "arrest."   The undersigned finds that habeas relief is not warranted on this claim.

Petitioner relies on a "show of authority" theory, arguing that when the ICE agent asked Petitioner to stop walking the second time, he used a "'**more authoritative**' manner commanding: '**Hey, did you hear me?  We want to talk to you for a minute, stop**.'" *Id.*,

p. 3 & note 4. (emphasis in original).  However, the Supreme Court has held that "a police officer's assertion of authority does not constitute a seizure unless the person actually submits." *Reeves v. Churchich*, 484 F.3d 1244, 1252 (10th Cir. 2007) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).  Where a suspect fails to stop in response to a "show of authority," no seizure has occurred.  *Id.*

According to Petitioner's own statements, he performed an "**uncontradicted, overt act of declining the agent's attempt at a consensual encounter**."  Second Amended Brief in Support, p. 1 (emphasis in original).  Further, the record shows that Petitioner's eventual decision to stop came simultaneously with his brandishing of the box cutter.  Based on these facts, the OCCA held that because Petitioner brandished the box cutter, his detention was warranted.  Response, Ex. 3 pp.  1-2 (citations omitted).  Under such circumstances, the undersigned finds that Petitioner has failed to show that the OCCA acted unreasonably when it denied Petitioner's claim that appellate counsel should have argued that the "show of authority" was in fact a "seizure" and occurred before Petitioner brandished the box cutter.

### Arguments (E) and (F) - The Lack of Criminality and Contextual Nature of the "Act/Crime"

Petitioner's arguments contained in subsections (E) and (F) are related.  Petitioner alleges first that the "act/crime" of pulling the box cutter was not a crime because:  (1) the ICE agent lacked jurisdiction; (2) the officers were out of uniform and did not identify themselves as federal officers; (3) the unidentified officers had only the authority of "private citizens" and the "citizen's arrest" was illegal; and (4) the officers were not in "hot pursuit."

Second Amended Brief in Support, pp. 8-10.  Petitioner next argues that the "act/crime" was "**an uncharged pretext, unrelated in scope** to the inchoate suspicion . . . to the crime with which [Petitioner] was later charged and convicted."  *Id.*, p. 11.  Petitioner claims that appellate counsel failed to raise or sufficiently argue these points on direct appeal.  For the following reasons, the undersigned concludes that Petitioner is not entitled to habeas relief on this ineffective assistance of counsel claim.

As previously discussed, the ICE agent had the necessary authority and jurisdiction to approach Petitioner with questions and to detain him for brandishing the box cutter.  *See supra*, pp. 13-14.  Further, Petitioner does not question FBI Agent Davis's authority or jurisdiction and offers only his bald assertion that the officers were limited to acting as "private citizens" making a "citizen's arrest."  Such conclusory statements cannot support claims of ineffective assistance of counsel on habeas review.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1023 n.2 (10th Cir. 2001) (rejecting habeas allegations because they were "conclusory" (citation omitted)); *see also United States v. Blanca-Leon*, 317 Fed. Appx. 836, 838 (10th Cir. 2009) ("Conclusory assertions are insufficient to establish ineffective assistance of counsel." (citation omitted)).

In addition, although the OCCA rejected the argument, appellate counsel did raise on direct appeal the issue of the federal officers' lack of uniforms and identification, arguing that Petitioner was entitled to defend himself from unidentified men.  *See* Second Amended Brief in Support, pp. 2-4; *see also*, *supra,* p. 12.

Moreover, Petitioner fails to explain his theory that the officers were required to be

in "hot pursuit."  This argument is also conclusory, without supporting facts or authority. Therefore, Petitioner's claim based on appellate counsel's failure to raise the "hot pursuit" issue is without merit.

Finally, Petitioner admits that he pulled out a box cutter and "stood his ground" trying to "ward [the officers] off."  Second Amended Brief in Support, p. 9.  The OCCA held that based on these facts, the federal officers had probable cause to detain Petitioner as an apparent danger to officer safety.  Response, Ex. 3, pp. 1-2.  Petitioner offers only his own speculation that his pulling the box knife was a "pretext" for his detention, and such speculation fails to demonstrate that his direct appeal would have turned out differently if appellate counsel had made such an argument.  For these reasons, the undersigned finds that Petitioner has failed to show that the OCCA unreasonably applied *Strickland* to these claims.

### **Argument (G) - Entrapment**

According to Petitioner, his appellate counsel was ineffective for failing to argue that he was "entrapped" into brandishing the box cutter.  Second Amended Brief in Support, pp. 12-14.  This claim is without merit.

Entrapment occurs when government officials induce a person to commit an offense that he was not otherwise predisposed to commit.  *See United States v. Nguyen*, 413 F.3d 1170, 1178 (10th Cir. 2005) (discussing the elements of entrapment).  "'Entrapment exists as a matter of law only if the evidence of entrapment is uncontradicted.'"  *Id.* at 1177 (citation omitted).  That is, "entrapment as a matter of law exists 'only when there is undisputed testimony which shows *conclusively* and *unmistakeably* that an otherwise

innocent person was induced to commit the criminal act.'" *Id.* (citation and bracketing omitted).

The federal officers consistently testified that they approached Petitioner hoping to engage in a consensual conversation about Petitioner's flight schedules and cargo. Petitioner offers only his own conclusion that the officers intentional tried to intimidate him into brandishing a weapon. Absent something other than Petitioner's personal opinion in this regard, there is not a reasonable probability that appellate counsel would have prevailed had such claim been raised on direct appeal. Therefore, the OCCA reasonably applied *Strickland* in rejecting this claim.

### Argument (H) - Coercion of Consent to Search

According to Petitioner, appellate counsel should have argued that his consent to search the aircraft was coerced.[12]  Second Amended Brief in Support, pp. 14-15. Petitioner admits that he consented to the search, but he contends, based primarily on two arguments, that his consent was coerced. First, Petitioner asserts that Agent Davis informed him that the officers were going to search his aircraft, and he could either give consent or sit and wait while they obtained a warrant. Petitioner also claimed that he was handcuffed and in custody when he gave the consent. *See id.*  Neither argument supports the underlying claim of coercion.

---

[12]According to Petitioner this claim is important because an ICE agent searched the aircraft before the Enid officers arrived with the drug dog. *See* Second Amended Brief in Support, p. 24. Although the record does not support Petitioner's version of the events, *see supra*, p. 8, even if it did, the federal officers had probable cause to search the aircraft based solely on Petitioner's statements concerning the presence of marijuana on the plane.

Most importantly, as previously discussed, the record demonstrates that the federal officers relied on Petitioner's statements that marijuana was on the aircraft and on the drug dog's "alert" on the plane rather than on Petitioner's consent as the basis for conducting the search. *See supra*, p. 7. Thus, the validity of his consent is irrelevant to the validity of the search.

In any event, Agent Davis's comment that Petitioner could either give consent to the search or wait for a warrant did not amount to coercion. *See United States v. Polly*, 630 F.3d 991, 999 (10th Cir. 2011) (rejecting claim that officer's statement that he would call a drug-sniffing dog if defendant did not voluntarily consent to search was coercive because "the mere fact that a suspect has to choose between two lawful, albeit distasteful, options does not render that choice coerced"); *see also United States v. White*, 339 F. Supp. 2d 1165, 1168, 1170 (D. Kan. 2004) (holding that officer's statement that defendant could give consent to search or could wait for a drug dog to sniff the vehicle weighed against defendant's claim of coercion because it actually made clear that defendant was not required to provide consent).

Moreover, Petitioner specifically stated that he gave consent because he wanted to punish the person who "duped" him into transporting marijuana. *See* T. Tr. Vol. II, pp. 194-95. Thus, it is clear from Petitioner's own testimony that his consent was voluntary even if the consent was given while he was in custody. "A person may voluntarily consent to a search even while being legally detained." *United States v. Contreras*, 506 F.3d 1031, 1037 (10th Cir. 2007); *see also United States v. Watson*, 423 U.S. 411, 424 (1976) ("[T]he fact of

custody alone has never been enough in itself to demonstrate a coerced . . . consent to search.").

For these reasons, the undersigned finds that there is not a reasonable probability that the outcome of Petitioner's direct appeal would have been different had appellate counsel raised a claim of coercion. Therefore, the OCCA reasonably applied *Strickland* to deny this claim of ineffective assistance of appellate counsel.

### Argument (I) - The Lack of Significant Intervening Circumstances

In subsection (I), Petitioner asserts that appellate counsel should have challenged the lack of intervening circumstances between the "entrapment/illegal arrest" and the "consent to search" or "drug dog search." Second Amended Brief in Support, pp. 15-16. However, as noted above, the record does not support either an "entrapment" or "illegal arrest" theory. *See supra*, pp. 12-14, 16-22. Accordingly, appellate counsel would have had no basis for making this claim on direct appeal. Therefore, the OCCA's application of *Strickland* was not unreasonable.

### Argument (J) - The Need for "Detention" of the Evidence Pending a Warrant

In subsection (J), Petitioner argues that the "very large trash bags" removed from the aircraft by the officers were "opaque," and although the bags were visible from the outside of the aircraft, "no green leafy substance was visible" and the "smell of marijuana was not present." Second Amended Brief in Support, p. 17. Petitioner argues that the officers were therefore "required to detain Petitioner's containers until a search warrant was obtained." *Id.*, p. 18. The OCCA's rejection of this claim raised in the context of ineffective assistance

of appellate counsel was not unreasonable.

Liberally construed, Petitioner's argument appears to be that even if federal officers had probable cause to search his aircraft, they lacked probable cause to search the bags found inside the aircraft without a warrant.  However, the law is clear that under the "automobile exception," officers have the right to conduct a warrantless search of containers located in the vehicle if there is probable cause to believe evidence of contraband is contained therein. *See California v. Acevedo*, 500 U.S. 565, 580 (1991)(finding that police may search containers found in an automobile if such search is supported by probable cause); *see also United States v. Oliver*, 363 F.3d 1061, 1068-69 (10th Cir. 2004)("if there is probable cause to believe that a container in a lawfully stopped vehicle contains contraband, the police may search the container without a warrant.").  As discussed, Agent Davis testified that Petitioner admitted there was marijuana on the aircraft, and according to Davis, the aircraft was very small and the large trash bags visibly filled the entire passenger area.  *See supra*, p. 7. Clearly, under these facts, the officers had probable cause to believe the marijuana was contained those bags.  The OCCA held that Petitioner's statements and his showing a weapon gave officers "probable cause to search the airplane and seize its illegal cargo."  Response, Ex. 3, pp. 1-2.  Petitioner does not cite any authority in support of his claim that the officers needed a warrant to search the bags inside the plane under these circumstances.  Thus, Petitioner has failed to establish that the OCCA unreasonably applied *Strickland* when it determined appellate counsel was not constitutionally ineffective for failing to challenge the warrantless search of the bags inside the aircraft.

### Argument (K) - The Officer's Lack of Probable Cause or Reasonable Suspicion to Detain Petitioner Without a Warrant

Petitioner's argument under subsection (K) is simply a restatement of his claim that the federal officers lacked probable cause or reasonable suspicion to detain him without a warrant. *See* Second Amended Brief in Support, p. 18. Petitioner offers no additional argument or evidence,[13] and these arguments have previously been addressed. No further analysis is warranted.

### Argument (L) - The Lack of Logic in the State Court's Decisions at "Preliminary Hearing, Both Suppression Hearings, Trial, Direct Appeal and Post-Conviction Proceedings"

In the index to his brief, Petitioner introduces subsection (L) as challenging the State courts' decisions at "preliminary hearing, both suppression hearings, trial, direct appeal and post-conviction proceedings" as being "clearly against the logic and effect of facts." Second Amended Brief in Support, p. iv. However, other than offering his own opinion that every ruling entered against him by the State courts was not only wrong but "illogical," Petitioner offers no legal or factual support for his claim that appellate counsel was constitutionally ineffective or failing to challenge the state court's lack of logic.[14] *See id.*, p. 18. Without supporting argument, Petitioner's conclusory assertions fail to demonstrate his entitlement to habeas relief on this claim. *See Humphreys v. Gibson*, 261 F.3d at 1023 n. 2 (rejecting

---

[13]Petitioner does attempt to incorporate new or additional arguments by reference to other motions and pleadings. However, the undersigned declines to consider arguments not addressed in the Petition or Second Amended Brief in Support. *See supra*, p. 2, note 2.

[14]The undersigned again declines to consider Petitioner's attempt to incorporate arguments made in another pleading.

habeas allegations because they were "conclusory" (citation omitted)); *see also United States v. Blanca-Leon*, 317 Fed. Appx. at 838 ("Conclusory assertions are insufficient to establish ineffective assistance of counsel." (citation omitted)).

### Arguments (M) and (N) - The Conspiracy Among Prosecutors and Federal and Local Law Enforcement Witnesses to Use "Perjury, Sophistry, Obfuscation and Material Misrepresentation of the Facts" to "Deceive the Court," and the State Court's Reliance on "Perjury, Material Inconsistent Statements, Material Mischaracterizations and Material Misrepresentations"

Petitioner's related arguments in subsections (M) and (N) fail for the same inadequacies found in his argument in subsection (L). Petitioner claims a conspiracy among all the state and federal actors to convict him based on "perjury, sophistry, obfuscation and material misrepresentations of the facts," and he argues that the state courts relied on such misrepresentations to allow and affirm his conviction. Second Amended Brief in Support, p. 19. Rather than describe and explain these allegations, however, Petitioner again attempts to incorporate arguments addressed in other documents. *See id.* For the reasons previously stated, the undersigned declines to engage in such a practice. *See supra,* p. 2, n. 2. These conclusory claims do not warrant habeas relief.

### Argument (O) - The Prosecutor's Four *Brady* Violations

In subsection (O), Petitioner argues that his appellate attorney should have challenged four *Brady* violations on direct appeal. Second Amended Brief in Support, pp. 19-20. However, Petitioner only identifies one of those violations[15] - the alleged withholding of an

---

[15]Petitioner's attempt to incorporate by reference further argument on this issue has been rejected. *See supra,* p. 2, note 2.

audiotape.  *See* Reply, pp. 14-15.  To the extent Petitioner argues other Brady violations, the undersigned finds such claims are conclusory and inadequately presented for habeas review.

In *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Petitioner relies on this holding to suggest appellate counsel should have challenged the State's failure to turn over an audiotape which Petitioner claimed would contain exculpatory information, presumably supportive of his denial that he made certain incriminating statements to Agent Davis.  *See* Reply, pp. 14-15.  Although Agent Davis admitted having a small tape recorder, he testified at trial that he did not even attempt to tape Petitioner's initial statements and that his attempt to tape Petitioner's telephone call with "Tavo" was unsuccessful.  PH. Tr., p. 33; T. Tr. Vol. II, pp. 105-106, 109-110.  Petitioner offers no testimony or other evidence to contradict Agent Davis's testimony.

Moreover, Petitioner testified at trial regarding the phone call Agent Davis asked him to make to the person to whom he was suppose to deliver the marijuana (Tavo).  Petitioner stated:

> He pulls out his tape recorder out of his pocket and I could see that it's on and he holds it up real close to the phone so that he can record both sides of the conversation which he did.  And I just told Tavo that, you know, I'm still on the way and winds were bad which they were and I would be up there around 10:00, you know as opposed to 8:30 which I was suppose to have been there.

*Id.*, p. 196.

Based on Petitioner's own trial testimony, this undisputed conversation, even if successfully recorded, contained no exculpatory evidence.  Consequently, Petitioner fails to meet his burden of showing that the OCCA unreasonably applied *Strickland* when it determined that appellate counsel was not constitutionally ineffective for failing to raise this claim on direct appeal.   Petitioner's remaining unspecified *Brady* based claims are conclusory and fail to demonstrate any basis for habeas relief.  The undersigned recommends denial of habeas relief on this issue.

### Argument (P) - The State's "Material *Crawford* Violation"

In subsection (P), Petitioner alleges that appellate counsel was ineffective for failing to challenge the State's "material *Crawford* violation."  Second Amended Brief in Support, p. 20.  In his Supplemental Reply, Petitioner clarifies that the *Crawford* violation "relates primarily to Agent Davis's admittedly unreliable and prejudicial hearsay evidence from agents in El Paso offered at the first suppression hearing, not at trial."  Supplemental Reply, p. 10.

In *Crawford v. Washington*, 541 U.S. 36, 54 (2004) the Supreme Court held that the use of testimonial hearsay violates a defendant's right to confront and cross-examine under the Confrontation Clause.  However, the Supreme Court has held that "the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself," *United States v. Raddatz*, 447 U.S. 667, 679 (1980).  Moreover, Petitioner fails to cite a Supreme Court case applying *Crawford* to a suppression hearing, and nor is the undersigned aware of such authority.  The Tenth Circuit Court of Appeals and other courts considering

the issue have suggested that *Crawford* does not apply outside of the actual criminal trial. *See, e.g., United States v. Bustamante*, 454 F.3d 1200, 1202 (10th Cir. 2006) (rejecting defendant's argument that officer's hearsay testimony at sentencing hearing violated the Confrontation Clause because *Crawford* concerned the use of hearsay statements at trial); *United States v. Garcia*, 324 Fed. Appx. 705, 708-709 (10th Cir. 2009) (finding no plain error in admission of testimonial hearsay at suppression hearing on grounds that the Supreme Court has never applied *Crawford* to suppression hearings); *United States v. Davis*, 361 Fed. Appx. 632, 636 (6th Cir. 2010) (suggesting that the Confrontation Clause does not apply in a suppression hearing); *United States v. Hernandez*, 778 F. Supp. 2d 1211, (D. N.M. 2011) (concluding that *Crawford* does not apply to detention hearings).

Absent a Supreme Court ruling directly on point and in light of the federal case law suggesting that *Crawford* would not apply in a suppression hearing, Petitioner cannot carry his burden of showing that the OCCA unreasonably applied *Strickland* when it determined that appellate counsel was not ineffective for failing to raise this claim on direct appeal.

### Argument (Q) - The State Court's Failure to Instruct on Entrapment

According to Petitioner, appellate counsel should have challenged the trial court's failure to instruct on entrapment. Second Amended Brief in Support, p. 20. The undersigned finds that the OCCA reasonably concluded under *Strickland* that appellate counsel was not constitutionally ineffective for failing to raise this claim on direct appeal.

In Oklahoma, "the trial court need not instruct [on entrapment] . . . where the totality of the evidence presented at trial could not be reasonably interpreted to establish that the

defendant was entrapped." *Soriano v. State*, 248 P.3d 381, 396 (Okla. Crim. App. 2011). Here, the totality of the evidence established that the federal officers approached Petitioner in a non-threatening manner in attempt to engage in a consensual conversation about Petitioner's flight schedules and cargo. Petitioner responded by trying to "ward off" the officers with a weapon while stating that "I can't go back." *Supra*, pp. 5-6. Without evidence that Petitioner was an "'unwary innocent' who [was] being unfairly enticed or duped into [brandishing the box cutter]," there is not a reasonable probability that the OCCA would have found that the trial court abused its discretion in failing to give an entrapment instruction. *Soriano v. State*, 348 P.3d at 396.

For these reasons, the undersigned finds that the OCCA reasonably applied *Strickland* when it held that appellate counsel was not constitutionally ineffective for failing to raise this issue on appeal.

## Argument (R) - The State Court's Placement of Questions of Law Before the Jury

Petitioner's argument in subsection (R) is limited to the following conclusory allegation: "*Prima Facia* evidence as offered at trial and in the record raising several other questions of law as well, and the trial court improperly placed them before the jury." Second Amended Brief in Support, p. 21. Without further discussion or explanation[16] by Petitioner, the undersigned cannot conduct a meaningful review Petitioner's claim that counsel was ineffective for failing to raise this alleged error. *See Humphreys v. Gibson*, 261 F.3d at 1023

---

[16]The undersigned declines to search the documents Petitioner attempts to incorporate by reference as support for this issue. *See supra* p. 2, note 2.

n.2 (rejecting habeas allegations because they were "conclusory" (citation omitted)); *see also*

*United States v. Blanca-Leon*, 317 Fed. Appx. at 838 ("Conclusory assertions are insufficient

to establish ineffective assistance of counsel." (citation omitted)).  Habeas relief should be

denied on this claim.

### Argument (S) - Ineffective Assistance of Pre-Trial and Trial Counsel

In his final sub-proposition, Petitioner contends that appellate counsel was ineffective

for failing to raise claims regarding his pre-trial and trial attorneys.  *See* Second  Amended

Brief in Support, pp. 22-28.  However, none of Petitioner's arguments warrant federal habeas

relief on his claim of ineffective assistance of appellate counsel.

Petitioner first alleges that his pre-trial attorney made mistaken admissions "against

Petitioner's interests" during the hearing on the motion to suppress the evidence.  For

example, according to Petitioner, the pre-trial attorney stated that "'[f]ederal authorities had

probable cause to arrest [Petitioner] in Houston or El Paso, long before he ever got to Enid,

Oklahoma,'" when in fact Agent Davis admitted that officials lacked probable cause to make

an arrest.  *Id.*, p. 22.  The attorney also allegedly stated that "'[Petitioner] was arrested

January 26, 2005, by F.B.I. Agent Joel Davis,'" when in fact Petitioner was seized by the

ICE agent without jurisdiction.  *Id.*, pp. 22-23.  Further, the attorney mistakenly stated that

Officer Reddick witnessed the cutting open of a brick of marijuana, when it was, in fact,

Agent Davis.  *See id.*, p. 24.  According to Petitioner, the attorney also allegedly admitted

that Petitioner "**purchased** heat sealed bags," even though Agent Davis testified that he had

no first-hand knowledge of that fact.  *Id.* (emphasis in original).  Finally, the attorney

allegedly used the word "'furtive'" to describe Petitioner's meeting with a Hispanic man in El Paso. *Id.*, p. 25.

The undersigned need not decide whether pre-trial counsel's comments were in fact mistaken, because the relevant question is whether the OCCA unreasonably applied *Strickland* when it rejected Petitioner's ineffective assistance of appellate counsel claim. *See supra*, pp. 10-11. To succeed on direct appeal, appellate counsel would have had to show a reasonable probability that the outcome of the suppression hearing would have been different had counsel not made the challenged statements. *See Strickland v. Washington*, 466 U.S. at 694. In light of the trial court and OCCA's reliance on Petitioner's own statements to support the finding of probable cause, *see* SH. Tr., p. 88 and *supra* pp. 12-13, there is not a reasonable probability that Petitioner would have prevailed at the suppression hearing but for counsel's alleged misstatements. Likewise, there is not a reasonable probability that appellate counsel would have prevailed on direct appeal based on these arguments.

Petitioner also alleges that both his pre-trial and trial attorneys should have investigated and discovered: (1) the trial court's lack of jurisdiction, (2) the conspiracy to convict Petitioner, (3) the State's "material misrepresentation of Petitioner's arrest," (4) Petitioner's expectation of privacy, (5) the lack of "crime" for pulling the box cutter, (6) that "Agent Davis, not Detective Reddick, witnessed a brick of marijuana cut open at the airport[,]" and (7) the lack of "intervening circumstances" between the illegal arrest and searches. Second Amended Brief in Support, pp. 23-25. Petitioner also accuses both attorneys of failing to file "a motion for the government to disclose evidence against

Petitioner." *Id.*, p. 23.

As extensively addressed above, the OCCA reasonably applied *Strickland* when it in effect held that there was not a reasonable probability that the outcome of the direct appeal would have different if appellate counsel had raised any of these issues on the merits. *See supra*, pp. 14-21, 24, 26. Accordingly, there is no more reasonable probability that the results would have been different if appellate counsel had raised these claims under the guise of ineffective assistance of pre-trial or trial counsel. And as noted above, Petitioner fails to explain what material evidence was undisclosed. *See id.*, pp. 26-27. Consequently, this conclusory claim fails to satisfy the standards for federal habeas relief[17] and the undersigned would recommend denial of habeas relief.

### Summary

Petitioner bears the burden of showing that there was no reasonable basis for the OCCA's denial of the ineffective assistance of appellate counsel claim. For the reasons detailed above, the undersigned concludes that Petitioner failed to carry that burden and that the OCCA's application of *Strickland* was in all respects reasonable. Accordingly, the undersigned recommends denial of habeas relief on Ground One.

## II. Ground Two - Cumulative Error

In Ground Two, Petitioner alleges that the cumulative errors in Grounds One and Three deprived him of a fundamentally fair trial. Petition, p. 6. The OCCA deemed this

---

[17]*See Humphreys v. Gibson*, 261 F.3d at 1023 n.2 (rejecting habeas allegations because they were "conclusory" (citation omitted)); *see also United States v. Blanca-Leon*, 317 Fed. Appx. at 838 ("Conclusory assertions are insufficient to establish ineffective assistance of counsel." (citation omitted)).

issue waived.  *See* Response, Ex. 5 p. 2.  Rather than determine whether the claim is procedurally barred, however, the undersigned finds that claim more easily disposed of on the merits.  *See Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004) (*per curiam*).

"Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors."  *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).  The undersigned has found no constitutional error among Petitioner's grounds for relief.  *See supra* pp. 12-33, *infra*, pp. 34-35.  Therefore, there is no basis upon which to find cumulative error, and it is recommended that habeas corpus relief be denied on Ground Two.

## III. Ground Three - Due Process Violations Through "Arbitrary and Capricious" State Court Rulings

In his third and final ground for relief, Petitioner makes a conclusory argument that the "state courts made arbitrary and capricious decisions."  Petition, p. 8.  Petitioner states that the "decisions of state courts, including pretrial and evidentiary rulings, were contrary to well established federal (and state) law and against the logic and effect of facts presented" and "were based on incompetent and/or unreliable evidence."  *Id.*  Finally, Petitioner argues that the "state courts ignored Petitioner's federal and state [constitutional] claims."  *Id.*

Because Petitioner fails to identify which particular rulings and claims he is challenging, this claim is too vague and conclusory to support habeas relief.[18]  *See*

---

[18]Respondent interprets this claim to be an attack on the merits of the state courts' Fourth Amendment rulings and encourages the Court to decline review under *Stone v. Powell*, 428 U.S. 465 (1976).  However, the undersigned finds that interpretation to be overly broad.  Petitioner had not just one but two (Petition and Second Amended Brief in Support) opportunities to explain the details

(continued...)

*Humphreys v. Gibson*, 261 F.3d at 1023 n.2 (rejecting habeas allegations because they were "conclusory" (citation omitted)); *see also United States v. Blanca-Leon*, 317 Fed. Appx. at 838 ("Conclusory assertions are insufficient to establish ineffective assistance of counsel." (citation omitted)).  Further, to the extent that Petitioner is simply reiterating his belief that the OCCA's holdings were unreasonable, the undersigned has extensively reviewed those holdings and finds no merit in Petitioner's claims.  *See supra* pp. 12-33.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the Petition for a Writ of Habeas Corpus and Petitioner's request for an evidentiary hearing be denied.

Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2).  Any such objection must be filed with the Clerk of this Court by the 17th day of January, 2012.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[18](...continued)
of his claims in Ground Three, and each time he failed to do so.  Liberal construction requires the Court to "fill[] in gaps and read vague terms expansively" but does not grant the Court authority to "invent '*ex nihilo,* a claim which simply was not made.'"  *Nettle v. Central Okla. American Indian Health Council, Inc.*, 334 Fed. Appx. 914, 920 (10th Cir. 2009) (citation omitted).

ENTERED this 28th day of December, 2011.


_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE